Van Voobhis, J.
The jurisdiction of the Supreme Court does not extend to questions of policy in the State Department of Social Welfare. The argument of petitioner’s counsel has been addressed in considerable part to grievances which are outside the province of the courts to determine.
The question for decision here is whether the petitioner acquired civil service rights so as to preclude his discharge as steward at the State Agricultural and Industrial School at *298 Industry, New York, except upon the preferment of charges and as a result of delinquency determined after a hearing of which he has had notice. Such rights belong to public employees in the competitive class who have obtained permanent positions as the result of examination under the Civil Service Law (Civil Service Law, § 22, subd. 2).
Petitioner became steward on November 1, 1938, at the instance of the superintendent of the school, who is the appointing power under section 55 of the State Charities Law. On December 2, 1938, the Department of Civil Service approved the selection as a provisional appointment under subdivision 4 of rule VIII of the Buies of Civil Service, pending the establishment of an appropriate eligible list, and in no case for a longer period than four months. This rule follows subdivision 1 of section 15 of the Civil Service Law, which establishes the four months’ limitation. No competitive examination was advertised within four months, and none was held until December 9, 1939, which resulted in the promulgation of an eligible list February 6, 1940. Meanwhile interim orders were issued purporting to continue petitioner’s provisional appointment. Petitioner stood second upon the list.
On February 15, 1940, petitioner, having thus duly qualified, was appointed to the position of steward for a temporary term of three months as provided for by Civil Service Rule XII (adopted pursuant to Civil Service Law, § 9) insofar as it states: ‘ ‘ Every original appointment to or employment in any position in the classified service shall be for a probationary term of three months, except as otherwise provided herein, and an appointing or nominating officer in notifying a person certified to him for appointment or employment shall specify the same as for a probationary term only; and if the conduct, capacity and fitness of the probationer are satisfactory to the appointing officer, his retention in the service after the end of such term shall be equivalent to his permanent appointment, but if his conduct, capacity or fitness be not satisfactory he may be discharged at the end of such term.”
This is the only manner in which a permanent appointment can be made from an eligible list, and, in the case of any of the first three persons named on the list, the appointment becomes permanent without further action if an appointee is retained at the end of the probationary period. (Hilsenrad v. Miller, 259 App. Div. 763; Graae v. Ahern, 258 App. Div. 686.)
Petitioner’s probationary period expired May 15, 1940. On that day he received written notification that his services would be terminated at noon upon the following day.
*299 Petitioner maintains upon several grounds that his selection ripened into a permanent appointment. To decide this question it is necessary to consider separately petitioner’s status under his provisional appointment of November 1, 1938, and under his probationary appointment of February 15, 1940.
Under the fundamental principles of the Civil Service Law, it is impossible for a provisional appointment in the competitive class to become permanent by lapse of time. Otherwise it would eliminate the necessity of passing an examination. Such appointments are made in anticipation of examinations, so as to carry on the work of the position until examinations can be held. Before a permanent appointment can be made, if no eligible list is in existence, the Civil Service Commission must advertise an examination. If less than three persons apply, or if less than three pass, the position is filled by noncompetitive examination. (Rule VIII, subd. 10.) It would result in evasion of these requirements if, without examination, permanent appointments could be made by extending provisional appointments in violation of statute for more than four months. The continuation of petitioner’s provisional appointment may have been illegal, but whether it was illegal or provisional, his occupancy of the position for more than four months could not give him permanent title thereto. (Matter of Ackerman v. Kern, 281 N. Y. 87; Matter of Kraus v. Singstad, 275 N. Y. 302; Matter of Rohl v. Jeacock, 259 App. Div. 208.)
Hilsenrad v. Miller (supra) and Graae v. Ahern (supra), upon which petitioner relies, do not involve provisional appointments made prior to the establishment of eligible lists. They hold that the Civil Service Law cannot be evaded by designating as temporary or provisional what is really a permanent selection from among persons who are eligible by reason of standing among the first three upon the list. In such event civil service rights accrue at the end of the three-months probationary time as is expressly provided by rule XII. The difference between those cases and the situation that exists where the appointee has never taken an examination is manifest. (Palmer v. Board of Educ. of Union Free School Dist. No. 2, Town of Geddes, Onondaga County, 276 N. Y. 222; Koso v. Greene, 260 N. Y. 491, 495.)
The argument advanced in behalf of the petitioner that his provisional appointment ripened into a permanent one without competitive examination upon the lapse of four months is therefore untenable. So also is the contention that either his provisional or temporary appointments became permanent by lasting longer than one month under subdivision 3 of section 15 of the Civil Service Law and subdivision 6 of rule VIII. This provi *300 sion can only be invoked after an eligible list has been established, and, when that happens, cannot result in shortening the probationary period of three months provided for by rule XII.
The effect of what happened after February 6, 1940, when the eligible list was made, is to be determined in accordance with rule XII, which has been quoted, providing that retention after the end of the probationary term is equivalent to permanent appointment. But this rule states also that if the conduct, capacity or fitness of the applicant be not satisfactory, he may be discharged at the end of such term. Petitioner by standing-second upon the list became eligible to permanent appointment. Nevertheless, the superintendent of the institution was permitted to select any one of the first three. (Rule VIII, subd. 1.) It is not the function of the courts to exercise the discretion of the appointing power. Petitioner received a probationary appointment for three months. To have kept him in the position afterward would have been equivalent to making the selection permanent (Hilsenrad v. Miller, supra; Graae v. Ahern, supra), but the superintendent could discharge him without a hearing at the end of the probationary period if, in his judgment, his conduct, capacity or fitness was not satisfactory. The courts will not review the discretion of the superintendent if it was exercised in good faith. (Matter of Voll v. Helbing, 256 App. Div. 44.) It has been argued that the superintendent was constrained by the Department of Social Welfare at Albany to remove petitioner so as to appoint one Vadney, who stood third upon the list. The superintendent has made affidavit that his reason for so doing was that a new superintendent was being appointed, and that Vadney’s selection in place of petitioner was necessary to maintain harmonious relations in the institution. However that may be, the petition fails to state facts sufficient to show that in removing petitioner the superintendent acted in bad faith. It is stated in the seventeenth paragraph that “ by reason of departmental interference he [the superintendent] was denied the right to act upon his judgment and experience ” in choosing Vadney and discharging petitioner. This is scarcely sufficient to constitute an allegation of bad faith. The power of appointment is conferred upon the superintendent by statute. (State Charities Law, § 55.) The State Department of Welfare has no power to control his discretion, and, in the absence of facts sufficient to show the exercise of undue influence, it will be presumed that the statutory duty was performed. In what the ‘ ‘ departmental interference ’ ’ consisted is not alleged. He could not be ‘1 denied the right to act upon his judgment ” in a matter wherein the exercise of judgment is *301 conferred upon him by statute except through coercion or force such as to render his conduct no longer his own free act and deed. If the superintendent was motivated by a desire to promote harmony between the new superintendent and the steward, it cannot be held to have been done in bad faith, nor that he was deprived of free will. The superintendent’s affidavit is part of the answer, and is of no effect in determining whether the petition states a cause of action. Nevertheless, a pleading is insufficient in law which fails to specify the acts wherein fraud or undue influence consists. (Kamenitsky v. Corcoran, 177 App. Div. 605, 607 et seq.; Ellis v. Keeler, 126 App. Div. 343, 346; Crossways Apts. Corp. v. Amante, 213 App. Div. 430, 435; Gerdes v. Reynolds, 281 N. Y. 180.) The charges contained in the petition are merely conclusions of law.
The question remains whether the fact that the petitioner was retained until noon on May 16,1940, is sufficient to stamp him as a permanent appointee. His probationary term expired on May 15. It appears from the answer, and is not controverted by the reply, that the pay period expired on May 16, and that he was continued the extra half day for convenience in keeping the accounts. Does the fact that he was continued for these few hours constitute, in the language of Civil Service Rule XII, his retention in the service after the end of the probationary term? It is reasonable to conclude that it does not. No evasion of the rule appears to have been attempted. If the notice served on May 15 had specified that he was to continue until the following Christmas, or for some other extended period, a court might properly hold that the appointment became permanent. It was so considered in Matter of Dalton v. Darlington (123 App. Div. 855, 857), where the court stated: “ In considering this question it must not be overlooked that the primary purpose of civil service laws and rules is to promote the good of the public service, and that purpose is not to be frustrated by technical or narrow constructions. The purpose of the probationary period is to enable the appointing officer to determine whether a permanent appointment is desirable. That question is left solely to his judgment, and he has the whole probationary period in which to decide it. The appointing officer determined, on the last day of the probationary term, not to make the appointment permanent. We are not at all concerned with the circumlocution in the department by which that result was reached. It may be that the commissioner could have determined the question at an earlier date; but it is sufficient for our purpose that on the fifteenth he determined not to make the appointment permanent. Now, on that date the relator was not at the office, as the *302 orders of his chief required, for which reason it was impossible to give him personal notice. As soon thereafter as practicable the required notice was given him, and it seems to me that this was a reasonable compliance with the rule.” In that case the court noted that the appointing officer has the whole probationary period in which to decide whether a permanent appointment is desirable. If that be true, it necessarily follows that the discharge need not take effect until the lapse of a short time after the period expires.
The provisions of section 14 of the Civil Service Law and subdivision 4 of rule IV of the Civil Service Buies that appointments, so far as practicable, shall be made from residents of the judicial district including the locality, are directory rather than mandatory. In this instance, out of the three persons at the head of the eligible list, the petitioner alone resides in the same judicial district. Unless outweighed by other considerations, the law provides a guide to discretion to be followed by the appointing power. It would be impossible without invading the province of administrative officials for the courts to determine whether other more important factors should be decisive.
The same reasoning overrules the argument that the superintendent’s hand is forced by the statutory provision relating to promotions.
The procedure remains to be considered. The proceeding is brought pursuant to article 78 (§ 1283 et seq.) of the Civil Practice Act and is in the nature of mandamus. It is instituted by a petition, to which the respondent has interposed an answer. Petitioner has replied to the affirmative defenses set forth in the answer. It is at present before the court upon the return of an order to show cause why the petitioner should not receive a permanent appointment. Bespondent applies for a dismissal of the petition.
Mandamus is the procedure prescribed by section 22 of the Civil Service Law. New article 78 of the Civil Practice Act, whereby mandamus has been abolished, provides that wherever in any statute reference is made to a writ or order of mandamus, such reference shall, so far as applicable, be deemed to refer to the proceeding authorized by article 78. This article provides for making a petition, answer and reply. It is provided (§ 1292) that if the petitioner desires to dispute any matter, other than denials, set forth in the answer, or the accuracy or completeness of the transcript of the record of proceedings annexed to the answer, he shall submit a reply. This means that new matter contained in the answer is admitted unless put in issue by a reply, and differs from the procedure in actions where new *303 matter is deemed to be controverted by traverse or avoidance, as the case requires, unless a reply is ordered by the court in the absence of a counterclaim (Civ. Prac. Act, § 243).
The present motion by petitioner corresponds to an application for a peremptory mandamus. If no questions of fact are presented, the court is empowered to dispose of the proceeding on the pleadings and grant final relief to either party entitled thereto upon the return day, without the service of motion papers by respondent. (Civ. Prac. Act, § 1295; Matter of Fahey v. Wright, 256 App. Div. 474.) The Special Term is empowered to act under subdivision 5 of section 1296, inasmuch as petitioner contends that in making the determination discharging him the superintendent of the institution violated rules of law affecting his rights to his prejudice.
For the reasons above stated, the relief demanded by the petitioner cannot be granted. On the other hand, the motion of the respondents to dismiss upon the pleadings must be granted, inasmuch as the facts hereinbefore stated are set forth in the petition or else pleaded in the answer without being put in issue by the reply.
The proceeding is dismissed, with costs.