Emil N. Baar, J.
Petitioner, by this review proceeding under article 78 of the Civil Practice Act, seeks to compel respondents to reinstate him to a position as Estate Tax Examiner in the State Department of Taxation and Finance, and to give him permanent status and compensation as such. . The facts disclosed by the motion papers show that petitioner, having successfully passed the requisite civil service examination was. included on a list for estate tax examiner promulgated on or about February 20, 1947. Thereafter, following a canvass of those willing to accept such employment, he was appointed to the position of temporary estate examiner, effective July 11, 1949, and assigned to the Brooklyn office. He continued in such employment, under successive temporary appointments, to and including February 16, 1951, a period of 19 months. Prior thereto he had been duly certified by the State Civil Service Commission for permanent appointment to the position of estate tax examiner, but he was never so formally designated. By letter, dated January 25, 1951, petitioner was advised by the head of the Brooklyn office that his temporary appointment would expire on February 16, 1951, and as of such date his employment was terminated. Effective February 19, 1951, another eligible (one S. Sanford Seader) was appointed as a permanent estate tax examiner in the Brooklyn office. The eligible list upon which both petitioner’s and Sender’s names appeared expired February 20, 1951.
It is petitioner’s claim that since the probationary period of an estate tax examiner is six months the attempt to retain him as a temporary employee beyond that time was illegal and in violation of subdivision 3 of section 15 of the Civil Service Law and that his actual retention beyond that period caused his temporary appointment to ripen into a permanent one (Rules for Classified Civil Service, rule XII, subd. 1, par. a, cl. 5) and that, holding such permanent status, he could only be removed for incompetency or misconduct and in compliance with subdivision 2 of section 22 of the Civil Service Law. He *383 avers that “respondents may not defeat the purpose of the Civil Service Law by the subterfuge of temporary appointments to a permanent position.” He makes the further point that the appointment of Seader to the permanent position was illegal inasmuch as the latter was selected not from a group of three names of eligibles submitted (of which petitioner was one) but from a group of four. (See rule VIII, subd. 1.) It appears that Seader was the last name on such list, petitioner immediately preceding him.
Assuming the factual situation to be as asserted by the respondents, there seems to be basic weaknesses in the structure of petitioner’s argument. He invokes the provisions of rule XII as stated but such rule applies only to appointments to fill an existing vacancy to a permanent position. Bule XII provides, in part, as follows: “1. Every original appointment to a position in the competitive class shall be for a probationary term of three months, except as otherwise provided herein. The appointment shall become permanent upon the retention of the probationer after the end of the probationary term; but if the conduct, capacity or fitness of the probationer be not satisfactory his service shall be discontinued at the end of such term.
“ a. The probationary period shall be six months for persons appointed to the following positions: * * *
“ 5. Junior Tax Examiner and Tax Examiner in the State Department of Taxation and Finance.”
Petitioner’s appointment was made expressly as a temporary one. It could not have been otherwise if respondents’ position is supported by the facts, for there was no actual vacancy to fill, as such term is understood in civil service. There was merely an interim fill-in occasioned by a provisional appointment of a tax examiner, one Max Krohn, to the higher grade position of senior estate tax examiner, pending the establishment of an eligible list for the latter title. Civil Service rules provide (see rule VIII, subd. 4) that the position occupied by such permanent appointee provisionally appointed to the higher grade position pending the establishment of an eligible list for such higher grade position shall be held open for the permanent appointee until he is assured of appointment to the higher grade position.
Petitioner attempts to place himself within the purview of the rule in question by claiming that when Max Krohn received his provisional appointment as senior tax examiner (May 1, 1949) there was an existent eligible list for the latter position which had been established April 13,1948.
*384 Respondents deny that there was snch an eligible list in existence for senior estate tax examiner and, in support of such denial, they have submitted an affidavit of one Francis J. Sullivan, an attorney in the legal bureau of the State Department of Civil Service, verified May 31, 1951. Such affidavit is in apparent conflict with the photostatic copy of a letter from the supervisor of the certification division of that department dated May 9, 1951, which it attached to petitioner’s reply as “ Schedule C.” The Sullivan affidavit states, “ That at the time of the provisional appointment of Max Krohn on May 1, 1949, to the position of Senior Tax Examiner, no new eligible list had been promulgated and there was no existing list from which permanent appointments could be made to the position of Senior Tax Examiner. This situation continued during the entire period of the temporary employment of Nathaniel Maxwell, petitioner herein, in the position of Estate Tax Examiner from July 11,1949, to February 16, 1951, during which time Mr. Maxwell was filling the temporary vacancy occasioned by such provisional promotion of Max Krohn to the position of Senior Tax Examiner.”
On the basis of the foregoing, respondents in their brief properly argue: “Neither the respondent, Department of Taxation and Finance, nor the Commission, had the power or ability to make a permanent appointment to a position from which the permanent occupant was absent temporarily while serving as provisional appointee to the higher grade position. The argument of the petitioner would under such circumstances, amount to a claim that petitioner was permanently appointed to a non-existent position, for which no appropriation had been made in the Budget and no authorization obtained from the Director of the Budget.”
The Court of Appeals in Matter of Hilsenrad v. Miller (284 N. Y. 445, 451) said: “ the fact that by a succession of extensions the petitioner was continued in his position for a period of nine months after the expiration of the statutory term for a temporary appointment, did not serve to invest him with rights, including tenure, which the law attaches to the status of permanent civil service employment. Being exempt from the usual civil service requirements for appointment, temporary appointees ‘ * * * are entitled to none of the advantages secured by period of tenure under the civil service rules ’. (Koso v. Greene [260 N. Y. 491], p. 494.) ”
Admitting the force of the Court of Appeals holding in the Hilsenrad case, petitioner contends that it is distinguished by *385 the holding in Matter of Battaglia v. Morton (272 App. Div. 372). Petitioner’s reliance upon any principle enunciated in the latter case seems unwarranted since the pivotal fact there was military service as related to civil service lists, which is not here involved.
With respect to petitioner’s claim as to violation of his rights based on the appointment of Sender to the permanent position of Transfer Tax Appraiser, a conflict of fact is presented. Sender’s name appeared fourth on the list submitted to the appointing power. Petitioner’s name was third. Respondents claim that the list actually consisted of three names, not four inasmuch as the eligible whose name appeared first in such list had declined appointment. Such allegations are put in issue by the reply.
This issue, as well as whether in fact on May 1, 1949 there had been established an eligible list for Senior Estate Tax Examiner above referred to, requires a trial in this proceeding under article 78 of the Civil Practice Act. The motion for an alternative order is granted, and the matter is referred to an Official Referee to take proof, as to any pertinent factual issues raised by the pleadings and to hear and determine on the basis thereof and the law applicable thereto.
Settle order on notice.