In the Matter of James J. Boyle, as President of the Uniformed Firefighters Association of Greater New York, et al., Respondents, v Edward I. Koch, as Mayor of the City of New York, et al., Appellants.

First Department, January 23, 1986

APPEARANCES OF COUNSEL

*Elizabeth I. Freedman* of counsel *(Leonard Koerner* and *Arnold Stream* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellants.

*Cheryl Eisberg Moin* of counsel *(Michael N. Block* with her on the brief; *Lipsig, Sullivan & Liapakis, P. C.,* attorneys), for respondents.

## OPINION OF THE COURT

SULLIVAN, J.

In this CPLR article 78 proceeding, respondents, the City of New York and various municipal agencies and executives including the Mayor, appeal from Special Term's vacatur of the Fire Commissioner's determination extending the probationary periods of two fire fighters, Mable Davenport and Vincent T. Manzella, by their time on sick leave, and its directive that said fire fighters be advanced from probationary fire fighters to the tenured rank of fire fighter third-class, effective one year from the date of their initial appointment to the fire department.

Davenport was appointed a fire fighter with the New York City Fire Department on September 25, 1982. Less than two months later, on November 18, 1982, while still assigned to the Division of Training, she sustained back and neck injuries during a training exercise. She has been on sick leave ever since, and has applied for accident disability retirement. By departmental order issued September 21, 1983, her probationary period was extended until further order pursuant to Personnel Policy and Procedure (PPP) No. 615-77a, which states, in relevant part, "The probationary period is extended by the number of days on pay status when the probationer was not performing the duties of the position, i.e., limited duty status, annual leave, sick leave, using compensatory time."

Manzella was appointed on August 7, 1982. On November

10, 1982, while assigned to an engine company, he sustained a line-of-duty injury to his left thumb, and, as a result, was on sick leave for 107 days from November 14, 1982 to March 1, 1983 and for another 109 days from March 31, to July 18, 1983, when he went on light-duty status. In his probationary performance evaluation, dated July 6, 1983, his superior officers noted that they were unable to rate him since, as a result of his "L.O.D. Med. leave, he has been unable to acquire the necessary practical experience." Manzella's company commander and the borough commander accordingly recommended that he be continued on probation. By memorandum dated August 11, 1983, Manzella was notified that, pursuant to PPP No. 615-77a, his probationary period was to be continued for a period to be determined on his return to full-duty status. In November 1983, he applied for accident disability retirement.

Both Davenport and Manzella, joined by the Uniformed Firefighters Association of Greater New York and its president, thereafter instituted this article 78 proceeding, alleging that the extensions of the probationary periods were arbitrary, capricious, and in violation of law. In opposing the petition, respondents, citing rule 5.2.2 (b) of the Rules and Regulations of the City Personnel Director, which provides that "[s]ubject to the provisions of the military law of the state of New York, the computation of the probationary period shall be based on the time during which the employee is on the job on a pay status", and PPP No. 615-77a, argued, *inter alia,* that the probationary term was properly extended by the time the two fire fighters were on sick leave.

Special Term, relying on *Matter of Glisson v Steisel* (96 AD2d 83), found that the Fire Commissioner's determination concerning the petitioner fire fighters' probationary periods was based on either an improperly promulgated rule or an erroneous interpretation of regulations. Citing City Personnel Director rule 5.2.8, the court held that the probationary period was subject to a maximum six-month extension, but only on the consent of the fire fighters. Inasmuch as one calendar year had passed since their appointments, Special Term ordered that Davenport and Manzella be advanced to the tenured rank of fire fighter third-class. Notwithstanding the defects in the promulgation of PPP No. 615-77a, we believe that rule 5.2.2 (b) of the Rules and Regulations of the City Personnel Director, a properly promulgated rule, autho-

rizes the Commissioner's determination. Thus, we reverse and dismiss the petition.

Civil Service Law § 63 (1) provides that every original appointment to a position in the competitive class shall be for a probationary term. The Rules and Regulations of the City Personnel Director, applicable to employees of the City of New York, provides for "a probationary period of one year" (rule 5.2.1 [a]) and as already noted, the computation of such period "shall be based on the time during which the employee is on the job on a pay status" (rule 5.2.2 [b]). Thus, the rules, which have the force and effect of law *(Matter of Albano v Kirby,* 36 NY2d 526, 529), specifically provide that the probationary term encompasses the period of time that the employee is actually "on the job on a pay status", not the calendar year commencing with the date of appointment.

The city's regulatory scheme is consistent with the purpose underlying the imposition of a probationary term. NY Constitution, article V, § 6 requires that appointments of public employees be determined by merit and fitness. Designed to assure that this mandate is met by furnishing an on-the-job trial, the probationary term provides a "better means to accurately determine [the employee's] fitness and merit than would any mere examination that could be had." *(People ex rel. Sweet v Lyman,* 157 NY 368, 380.) Thus, in determining whether to grant tenure, a supervisor is afforded the opportunity to observe an employee's performance and ascertain his fitness for the job. *(Supra; see also, Matter of Albano v Kirby,* 36 NY2d, at p 531.)

An employee on sick leave is not performing the duties of his job, and during such period, his merit and fitness cannot be evaluated. As a matter of law and common sense, time spent on sick leave should not be considered as time "on the job" within the meaning of City Personnel Director rule 5.2.2 (b) and included in the computation of the probationary period. To hold otherwise would nullify the obvious purpose of the probationary term requirement. *(Accord, Matter of Graae v Ahern,* 169 Misc 633, 634.)

The facts of this case demonstrate the wisdom of the "on-the-job" requirement in calculating the one-year probationary term. Both Davenport and Manzella were on sick leave most of their first calendar year after appointment, and had barely spent any time working. At the time she injured herself and went on sick leave, Davenport had not even completed her

training course. In Manzella's case, he had been assigned to an engine company for only a few weeks. In such circumstances, evaluation of their fitness for appointment as fire fighters was impossible, since neither was on the job long enough to demonstrate his or her ability.

The constitutional requirement that appointments be based on merit and fitness is designed to protect the public, assuring that only those of proven competence serve in its employ. For that reason alone, the advancement of Davenport and Manzella to tenured rank would set a dangerous precedent. In probably no other area of public service are the requirements of merit and fitness more important than in the uniformed services. Police officers and fire fighters, upon whose performance and judgment the public's safety and security depend, should not be advanced to tenured rank without having proven their competence during the mandated probationary period.

While this court's decision in *Matter of Glisson v Steisel* (96 AD2d 83, *supra)* upon which Special Term relied, found that PPP No. 615-77a was either improperly promulgated or published, its validity is unnecessary to uphold the Commissioner's determination that the probationary periods of both Davenport and Manzella were extended by the time they were on sick leave. Rule 5.2.2 (b) of the Rules and Regulations of the City Personnel Director, the validity of which is not challenged, clearly demonstrates the intent of the City Personnel Director that, subject to the Military Law *(see,* § 243 [9]), the probationary period include only active periods of city service. Thus, even without PPP No. 615-77a, the Fire Commissioner was free to extend the periods of probation by the time each of the probationary fire fighters had spent on sick leave. Though he may have relied on an invalid regulation (PPP No. 615-77a), the authority for his determination remains extant in rule 5.2.2 (b).

Nor does the *ratio decidendi* of *Matter of Glisson (supra)* dictate a different result. There, an employee was "grounded" because of an on-duty vehicular accident for which he was believed responsible. The municipal agency attempted to extend his probationary term by the amount of time he was grounded, arguing that this unilaterally imposed status constituted limited duty within the meaning of PPP No. 615-77a. The court was obviously concerned with the potential for abuse if probation could be indefinitely extended merely by placing an employee on limited-duty status (96 AD2d, at p 85).

Thus, its comments concerning an employee's right to know the termination date of his probationary period have to be viewed with this cogent policy consideration in mind. They were not intended as precedent for the proposition that sick leave be included in the calculation of the probationary period. Furthermore, *Glisson* reasoned that, even if, as argued, PPP No. 615-77a is no more than an interpretive regulation, it is, as to limited duty, an irrational interpretation of rule 5.2.2 (b), since an employee on limited duty is "on the job on a pay status" *(supra,* p 85). *Glisson* thus implicitly recognized the distinction between an employee on limited duty and one not "on the job". Hence, the rule 5.2.2 (b) limitation on the computation of the probationary term to time "on the job on a pay status" necessarily limits the holding of *Glisson* to employees "on the job" in limited-duty status.

Instead of applying the plain language of rule 5.2.2 (b) in its assessment of the rationality of the Fire Commissioner's calculation of the probationary period, Special Term invoked rule 5.2.8 to justify its determination. Rule 5.2.8 is addressed to an entirely different matter, the consensual extension of the one-year on-the-job probationary period, and has nothing to do with the computation of the period and the line of demarcation between time that is included and time that is excluded.

Furthermore, in noting that Davenport and Manzella had applied for accident disability retirement, and that their benefits would be diminished if they retired as probationary fire fighters,* Special Term apparently believed that the Fire Commissioner was primarily motivated by the prospect of reducing pension costs. While undoubtedly of some significance, such consideration should by no means be the primary concern in the decision to extend the probationary term of a disabled-from-work fire fighter. Overriding all other considerations should be the commitment to the constitutional mandate that only those fire fighters who have demonstrated merit and fitness be granted tenure. There is not a scintilla of evidence that this was not the paramount consideration here. To be sure, any probationer who is injured in service should be granted the protections to which he or she is entitled, such as sick leave benefits and the opportunity to apply for disability

---

* An accident disability retirement benefit consists of three-quarters pay, tax-free, for life. (Administrative Code of City of New York § B19-7.89.) Thus, if retired as tenured fire fighters, Davenport and Manzella would receive three-quarters of fire fighter third-class pay, as opposed to three-quarters of fire fighter fourth-class (probationer) pay.

retirement. The grant of tenure, however, to an employee who does not successfully complete a probationary period frustrates the function of probation, and undermines the constitutional requirement that appointments be based on merit and fitness.

Accordingly, the order and judgment (one paper), Supreme Court, New York County (Martin Evans, J.), entered August 9, 1984, which, *inter alia,* granted the petition and annulled the Fire Commissioner's determination, should be reversed, on the law, without costs or disbursements, and the petition dismissed.

KUPFERMAN, J. P., Ross, KASSAL and ELLERIN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on August 9, 1984, unanimously reversed, on the law, without costs and without disbursements, and the petition dismissed.